UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    :
ANTHONY ACOSTA,                     :
                                    :
                       Plaintiff,   :      11 Civ. 8561 (KBF)
                                    :
                                    :
        -v-                         :      MEMORANDUM & ORDER
                                    :
CITY OF NEW YORK, INSPECTOR MICHAEL  :
HARRINGTON, in his individual and   :
professional capacity, POLICE       :
OFFICERS MICHAEL MAZZILLI AND POLICE :
OFFICERS "JOHN DOES" in their       :
individual and professional         :
capacities,                         :
                                    :
                       Defendants.  :
-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/26/12

KATHERINE B. FORREST, District Judge:

    Plaintiff Anthony Acosta, a self-described Hispanic male

and former police officer with the New York City Police

Department ("NYPD"), brings this action against defendants the

City of New York (the "City"), Inspector Michael Harrington (in

his individual and professional capacities), Police Officer

Michael Mazzilli (in his individual and professional

capacities), and an unspecified number of John Doe police

officers.[1]  Plaintiff alleges that as part of, and subsequent to,

---

[1] Plaintiff lists certain "John Doe" police officer defendants in the caption
of the Amended Complaint--and makes certain allegations against them.  (See,
e.g., Am. Compl. ¶ 14.)  However, plaintiff has not identified those officers
and there is no indication that plaintiff has attempted to ascertain their
identities from the City.  No service has been effectuated on those John Does
and thus, they are not properly before this Court.  Accordingly, the Court
only construes plaintiff's claims against those defendants who were properly
served.

a 2008 altercation that occurred while plaintiff was off-duty, defendants engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law ("NYSHRL"), New York State Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8-107 et seq., the use of excessive force in violation of 42 U.S.C. § 1983, and were acting under color of state law pursuant to unlawful policies in violation of Monell v. Department of Social Services, 438 U.S. 658 (1978).

The City of New York along with defendants Harrington and Mazzilli have moved to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, defendants' motion is granted.

FACTUAL BACKGROUND[2]

On December 17, 2008 at approximately 11:05 p.m., plaintiff, at that time a uniformed member of the NYPD with the

---

[2] For purposes of deciding the instant motions, the Court accepts as true all well-pleaded allegations in plaintiff's Amended Complaint and draws all reasonable inferences in plaintiff's favor.  See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001).

In connection with plaintiff's opposition to the motion, plaintiff submitted various documents not referenced in, or integral to, the Amended Complaint. (See Decl. of Rocco G. Avallone in Opp'n to Mot. to Dismiss (Dkt. No. 22) Exs. B-G.)  Consideration of such documents is inappropriate on a motion to dismiss, see DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010), and the Court has not done so in connection with deciding the instant motion.

rank of Sergeant, was exiting a restaurant and bar near 1490
First Avenue in New York City, while off duty.  (Am. Compl.
(Dkt. No. 18) ¶¶ 15, 16, 18.)  After plaintiff entered his own
car, through his car window he witnessed a separate vehicle
strike an individual.  (Id. ¶ 18.)  Plaintiff exited his car to
investigate and, in the process of trying to protect an
allegedly "dark skinned and possible [sic] Hispanic" cab driver
from "being attacked by several [intoxicated] off duty police
officers from the 19th Precinct," was struck by a 2 x 4 piece of
wood by a John Doe police officer.  (Id.)  Plaintiff then
identified himself (presumably to the John Doe police officer)
as a police officer.  (Id. ¶ 18.)

Plaintiff alleges that Captain Pla from the 19th Precinct,[3]
one of the NYPD officers at the scene of the incident, failed to
take any action to protect either (a) plaintiff, who was
attempting to take the 2 x 4 away from one of the John Doe
off-duty police officers, or (b) the "dark skinned cab driver."
(Am. Compl. ¶ 19.)  Plaintiff finally wrestled the 2 x 4 into
his possession, after which an NYPD vehicle arrived at the
scene.  (Id. ¶ 21.)  At that time, plaintiff purportedly
identified himself as a police officer, and attempted to inform
the "plain clothes" police officers about the car accident and

---

[3] At all times relevant to the complaint, plaintiff was with the 30th
Precinct.  (Am. Compl. ¶ 10.)

altercation between the cab driver and the off-duty police
officers.  (Id.)

Plaintiff then purportedly approached Officer Mazzilli,
identified himself as a police officer, and informed him of the
altercation between the off-duty police officers and the cab
driver--and pointed out the off-duty officers.  (Am Compl.
¶ 23.)  In response, defendant Mazzilli allegedly yelled at
plaintiff to remove his hands from his pockets, grabbed
plaintiff's wrist, pushed plaintiff's hands into his pockets,
but then maneuvered plaintiff's elbow to try to remove
plaintiff's hands from his pockets.  (Id. ¶¶ 24-25.)  At that
time, plaintiff again informed defendant Mazzilli that he was an
on-duty police officer,[4] to which Mazzilli responded that he did
not care, punched plaintiff in the chest, threw plaintiff to the
ground, and handcuffed plaintiff's left wrist.  (Id. ¶¶ 25-26.)

Defendant Mazzilli then attempted to handcuff plaintiff's
right arm behind his back but could not due to limited mobility
resulting from a prior surgery.  (Am. Compl. ¶¶ 26-27.)
Plaintiff allegedly pleaded with Mazzilli to stop, explained the
problem with his right arm, and requested that two sets of
handcuffs be used; Mazzilli obliged.  (Id. ¶ 27.)  A "plain
clothes" John Doe police officer subsequently inquired if

---

[4] Plaintiff alleges that he told defendant Mazzilli, "I'm a Sergeant.  I'm on
the job." (Am. Compl. ¶ 25) despite the fact that plaintiff alleges earlier
in the Amended Complaint that he was off-duty at the time of the alleged
altercation (id. ¶ 18).

plaintiff was armed, and, upon learning he was not, removed both sets of handcuffs and placed plaintiff in an SUV. (Id. ¶ 29.) Thereafter, plaintiff was transported to the 19th Precinct for interrogation. (Id. ¶ 30.)

Plaintiff alleges that defendant Inspector Michael Harrington approached him prior to his interrogation, informed him that he was not a subject of the investigation of the assault against the cab driver, but that he should lie during questioning regarding both what had occurred between the John Doe officers and the cab driver and what had occurred between plaintiff and Officer Mazzilli. Harrington then allegedly provided plaintiff with the version of the story he should tell to protect the off-duty police officers. (Am. Compl. ¶¶ 31, 34-35.) According to plaintiff, Harrington provided his directives in front of two Sergeants--Mulvey and Cosmo--who allegedly were delegates from the Sergeants Benevolent Association. (Id. ¶¶ 32, 34.) Plaintiff informed Sergeants Mulvey and Cosmo of what had occurred, after which Mulvey informed plaintiff that it was inadvisable to go to the hospital for his purported injuries because the investigators "were looking to suspend Plaintiff" and a hospital visit would make plaintiff look "uncooperative and guarantee a suspension." (Id. ¶¶ 32, 33.) Based on that information, plaintiff allegedly did

not seek medical attention subsequent to his interrogation.
(Id. ¶ 33.)

Plaintiff, however, purportedly informed defendant
Harrington that he would refuse to provide the story that
Harrington had requested he give.  (Am. Compl. ¶ 31.)  It is
alleged, however, that "defendants" never interviewed the John
Doe police officers who had seen the altercation between
Mazzilli and plaintiff.  (Id. ¶ 44.)  Mulvey then spoke to
Harrington and informed plaintiff that plaintiff was going to be
placed on "Modified status;" he was placed on such status
shortly thereafter.  (Id. ¶ 36.)  The Amended Complaint does not
contain an explanation of the meaning of being placed on
modified status.

Plaintiff alleges that he was also "issued Charges and
Specifications" on August 18, 2009, and October 29, 2009, for
failing to lie during his interrogation "to protect the white
police officers" who were involved in the December 17, 2008
altercation with the cab driver.  (Id. ¶ 38.)  Plaintiff does
not explain what charges or specifications were issued against
him, or what it means to have charges and specifications issued.
Then, on January 8, 2010, plaintiff alleges that he was placed
in "Level II discipline monitoring" for approximately nine
months.  (Id. ¶ 39.)  Again, plaintiff fails to explain what

6

Level II discipline monitoring is or what precisely that meant
in the context of plaintiff's job as an NYPD Sergeant.

Plaintiff retired on October 2011--over two years later
than he allegedly planned to retire.  (Am. Compl. ¶¶ 40, 41.)
Plaintiff allegedly could not retire in March 2009 when planned
because he purportedly could not obtain a "Good Guy" letter
based on his placement on Level II status.  (Id. ¶ 41.)
Plaintiff also alleges that he had to forfeit a private security
job, with a purported $140,000 annual salary, that he "had lined
up" without the "Good guy" letter.  (Id.)  Plaintiff also
alleges damages associated with failing to obtain overtime or
special assignments based upon his modified and Level II
statuses.  (Id. ¶ 43.)  It is further alleged that "defendants"
continued their retaliation in unspecified ways through October
2011 because plaintiff would not accept a penalty for the
charges.  (Id. ¶ 45.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 23, 2011.
(Dkt. No. 1.)  On January 3, 2012, defendants requested a
pre-motion conference related to an anticipated motion to
dismiss plaintiff's original complaint, in response to which the
Court set a briefing schedule.  (Dkt. No. 10.)  Defendants moved
to dismiss the original complaint on January 18, 2012.  (Dkt.
No. 12.)

The Court held the initial pretrial conference in this matter on January 27, 2012.  (See Dkt. No. 14.)  At that conference, the Court informed plaintiff's counsel that plaintiff could withdraw his original complaint and file an amended complaint, taking into consideration defendants' motion to dismiss, or proceed on its original complaint and, if such complaint was found defective, any dismissal would be with prejudice.  (See id.)  In addition, the Court notified plaintiff's counsel at the conference that, given that plaintiff had been given notice of the defects in the original complaint from defendants' motion to dismiss the original complaint, plaintiff would be given a single chance to amend the complaint. In other words, the Court stated that if defects remained in any amended complaint, any dismissal would be with prejudice--i.e., without leave to amend.

Plaintiff elected to amend his complaint (Dkt. No. 15), and filed the Amended Complaint on February 10, 2012 (see Dkt. No. 18).  Plaintiff asserts claims under 42 U.S.C. § 1983 against the City and defendants Harrington and Mazzilli for racial discrimination, hostile work environment, and excessive force (Count One),[5] for violations of Title VII against the City (Count Two), New York State Human Rights Law, N.Y. Exec. Law § 296, et

---

[5] Plaintiff's claims are asserted in conclusory fashion, but defendants--and the Court--construed them as broadly as possible on this motion to ensure that all potential claims were encapsulated by this decision.

seq. against all defendants (Count Three), New York City Human

Rights Law, N.Y. City Admin. Code § 8-107 et seq. against all

defendants (Count Four), 42 U.S.C. § 1983 for violations of

constitutional rights under Monell v. Department of Social

Services, 438 U.S. 658 (1978), against the City (Count Five),

and 42 U.S.C. § 1981 for discrimination and retaliation (Count

Six).

Defendants filed the instant motion to dismiss on March 1,

2012, plaintiff opposed the motion on March 21, 2012, and the

motion was fully briefed as of March 28, 2012.  (Dkt. Nos. 19,

21, 23.)

DISCUSSION

I.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the

plaintiff must provide the grounds upon which [its] claim rests

through factual allegations sufficient 'to raise a right to

relief above the speculative level.'" ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell

Alt. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other

words, the complaint must allege "enough facts to state a claim

to relief that is plausible on its face." Starr v. Sony BMG

Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly,

550 U.S. at 570).  See also Ashcroft v. Iqbal, 556 U.S. 662, 129

S. Ct. 1937, 1949 (2009) (same).  "A claim has facial

9

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments--in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 129 S. Ct. at 1950).

As an initial matter, plaintiff's claims fail because they do not meet the standard promulgated by Twombly and Iqbal. In particular, plaintiff's Amended Complaint is, as Judge McMahon recently put it, "a recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)." Bermudez v. The City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011). But the sine qua non of a race-based discrimination or retaliation claim is that discrimination or retaliation was because of race. As discussed further below, plaintiff fails to connect the dots between the

alleged adverse actions and his membership in a protected class. The Court will address each of plaintiff's claims, including his excessive force and Monell claims, seriatim.

II. EMPLOYMENT DISCRIMINATION

    A. CLAIMS UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1983, and NYSHL

Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973). The same applies to claims of employment discrimination pursuant to 42 U.S.C. § 1983 and the NYSHL. See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL); Boykin v. KeyCorp., 521 F.3d 202, 213 (2d Cir. 2008) (§ 1983). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination, and must demonstrate (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination. Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (§ 1983).

However, the McDonnell-Douglas test is "an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002). An "employment discrimination

plaintiff need not plead a prima facie case of discrimination"
on this motion; instead, as long as the complaint gives the
defendant "fair notice" of the plaintiff's claim, "the grounds
upon which it rests" and "indicate[s] the possibility of
discrimination and thus present[s] a plausible claim for
disparate treatment," the complaint satisfies Rule 8(a) of the
Federal Rules of Civil Procedure.  Boykin, 521 F.3d at 214-16.
Of course, "[t]he Iqbal plausibility standard applies in
conjunction with employment discrimination pleading standards."
Jackson v. New York St. Dep't of Labor, No. 09 Civ. 6608, 2012
WL 843631, at *2 (S.D.N.Y. Mar. 12, 2012) (quotation marks and
citation omitted).

Although plaintiff does allege an adverse employment
action--i.e., that he was denied overtime and special
assignments based on his Level II and modified status (Am.
Compl. ¶ 43)--he fails to raise a plausible inference that the
action was taken on account of his race or national origin.
Rather, plaintiff specifically alleges that the adverse
employment action--being placed on modified status and Level II
discipline monitoring--resulted from him refusing to "lie" when
he was interrogated about the incident between the John Doe
police officers and the cab driver.  (See Am. Compl. ¶¶ 31, 35,
36, 38 ("In retaliation for failing to follow Defendant
Harrington's unlawful directive regarding testifying falsely

during Plaintiff's interrogation, . . . Plaintiff was issued Charges and Specifications . . .".) Plaintiff does not connect the fact that he is Hispanic to any of the alleged adverse actions taken against him other than alleging that the John Doe officers were white. (See Am. Compl. ¶ 38.) That is fatal to his discrimination claims. See Int'l B'hood of Teamsters v. U.S., 431 U.S. 324, 335 (1977).

Plaintiff attempts to show that he was treated differently than the John Doe officers by intimating that "defendants" did not question the John Doe officers about the altercation between plaintiff and Mazzilli. (Id. ¶ 44.) Plaintiff does not make any allegations about what the John Doe defendants were or were not told to say about the incident. Nor does plaintiff allege that the officers did not face disciplinary charges or changed "status" as a result of the incident between themselves and the cab driver. Indeed, plaintiff specifically alleges that he was told that if he did not lie, "some NYPD officers would get disciplined." (Id. ¶ 35.)

The Amended Complaint's allegations provide the distinct impression that plaintiff faced the alleged adverse action due to his purported failure to lie to protect other NYPD officers-- not based upon his race. Even assuming the truth of those allegations, as the Court must on this motion, it does not provide any basis for the Title VII, sections 1983 and 1981, and

NYSHRL claims asserted here.  See Iqbal, 129 S. Ct. at 1949.  In other words, the Amended Complaint fails to advance a plausible claim for disparate treatment under those statutes. Accordingly, those claims are dismissed.

B. NYCHRL

Although employment discrimination claims under the NYCHRL are "to be evaluated separately from counterpart claims brought under Title VII," Kolenovic v. ABM Indus. Inc., 361 Fed. Appx. 246, 248 (2d Cir. 2010), to effectuate the statute's "uniquely broad and remedial" purpose, Kaur v. New York City Health & Hosp. Corp., 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) (quotation marks omitted); see also Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 688 (S.D.N.Y. 2011) ("Claims under the City HRL must be given an independent liberal construction." (quotation marks, citation, and alterations omitted)), claims of employment discrimination under the NYCHRL likewise are subject to the McDonnell-Douglas burden-shifting analysis, see Spiegel, 604 F.3d at 80; Pilgram v. McGraw-Hill Cos., 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009) ("[T]he standard for all Title VII, section 1981, [NYSHRL] and [NY]CHRL employment discrimination claims is the same."); Fowler v. Scores Holding Co., Inc., 677 F. Supp. 2d 673, 682 (S.D.N.Y. 2009).  "[A]t a minimum, employment discrimination claims [under NYCHRL] must meet the standard of pleading set forth in Twombly and Iqbal . . . ."  Goodman v.

Port Auth. of New York & New Jersey, No. 10 Civ. 8352, 2012 WL
664531, at *16 (S.D.N.Y. Feb. 29, 2012).

Plaintiff's NYCHRL employment discrimination claim fails
under both McDonnell-Douglas and Twombly/Iqbal for the same
reason as its federal and state counterparts--i.e., the absence
of allegations connecting the purported adverse employment
actions to plaintiff's race.  As discussed in connection with
the Court's analysis of plaintiff's employment discrimination
claims under federal and state law, there is no plausible
inference that plaintiff's placement on modified status or Level
II disciplinary monitoring resulted from his race.  Rather,
plaintiff's own allegations state that plaintiff was subjected
to adverse actions because he failed to lie to protect other
NYPD officers, as instructed by defendant Harrington.  (See,
e.g., Am. Compl. ¶¶ 31, 35, 36, 38.)  Accordingly, even under
the NYCHRL's liberal construction, plaintiff's employment
discrimination claim under NYCHRL is dismissed.

C. RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

Section 1981 of chapter 42 of the United States Code
provides,

> All persons . . . shall have the same right . . . to
> make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all
> laws and proceedings for the security of persons and
> property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a).

Claims of employment discrimination under section 1981 are analyzed under the same framework as discrimination claims under Title VII and section 1983. Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981); Jermott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) (§ 1983).

Where a defendant is a state actor, claims may only lie under 42 U.S.C. § 1983 for violations of rights under 42 U.S.C. § 1981. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Gladwin v. Possi, 403 Fed. Appx. 603, 604-05 (2d Cir. 2010) (the plaintiff's "§ 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983" (citing Jett, 491 U.S. at 735)).

Here, to the extent that plaintiff seeks to assert claims against defendants Harrington and Mazzilli in their official capacity or against the City, those claims are analyzed under section 1983 and are dismissed for the reasons set forth in Part II.A., supra. To the extent that plaintiff seeks to bring claims against them under section 1981, the claims are dismissed against the City and against Harrington and Mazzilli in their official capacity. Bermudez, 783 F. Supp. 2d at 576.

II. HOSTILE WORK ENVIRONMENT

    A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL

    Under federal and New York state law, a hostile work environment claim is sufficiently plead where the complaint alleges that the plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quotation marks and citations omitted); see also Patterson, 375 F.3d at 227; Kumaga v. New York City Sch. Constr. Auth., 27 Misc.3d 1207(a), 2010 WL 1444513, at *8 (N.Y. Sup. Ct. Apr. 2, 2010) (NYSHRL). In looking at the totality of the circumstances, a court may also consider certain factors, among others, to determine whether a work environment is "hostile"--e.g., the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's "work performance." Harris, 510 U.S. at 23.

    The question of "hostility" of a work environment is both subjective--i.e., did the plaintiff find it hostile--and objective--i.e., would a reasonable person have found it hostile. Harris, 510 U.S. at 21-22. The "hostility," however, must be borne of "animus towards [the plaintiff] as a result of

[his] membership in a protected class." Sullivan v. Newburgh
Enlarged Sch. Dist. Clarence Cooper, 281 F. Supp. 2d 689, 704
(S.D.N.Y. 2003).  Severity is a hallmark of a hostile work
environment claim.  Such claims "are not intended to promote or
enforce civility, gentility or even decency." Ennis v. Sonitrol
Mgmt. Corp., No. 02-CV-9070, 2006 WL 177173, at *9 (S.D.N.Y.
Jan. 25, 2006).

The rubric just described applies similarly to hostile work
environment claims under 42 U.S.C. §§ 1981 and 1983, and the
NYSHRL.  Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597,
609 (2d Cir. 2006); Ferraro v. Kellwood Co., 440 F.3d 96, 99 (2d
Cir. 2006).

As with plaintiff's employment discrimination claims, the
hostile work environment claims under Title VII, 42 U.S.C.
§ 1983, and NYSHRL fail because there are no allegations that
any animus--subjective or objective--stemmed from plaintiff's
"membership in a protected class."  Merely using the words
"Hispanic" in reference to himself and "white" in reference to
the John Doe police officers in his Amended Complaint does not
create a plausible inference of hostility based upon race or
national origin.  See Bermudez, 783 F. Supp. 2d at 581.  There
is simply nothing alleged to demonstrate that race factored into
defendants' alleged actions.  Thus, the hostile work environment

claims under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL are dismissed.

B. NYCHRL

The NYCHRL's "liberal construction" lowers the standard for a hostile work environment claim brought under its auspices. Bermudez, 783 F. Supp. 2d at 579; see also Farrugia v. N. Shore Univ. Hosp., 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006) ("The New York City Human Rights Law was intended to be more protective than the state and federal counterpart."); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ("claims under the [NYCHRL] must be given an independent liberal construction" (quotation marks omitted)). A "hostile work environment" for purposes of the NYCHRL is one where there is "differential treatment" period. Williams v. New York City Housing Auth., 61 A.D.3d 62, 77 (1st Dep't 2009). In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class. Id. Questions of "severity" or "pervasiveness" go to damages only--not to liability. Id. at 76.

As discussed above, plaintiff fails to allege that he was treated differently from the John Doe police officers. There are, as mentioned, no allegations that the John Doe police officers did not face disciplinary charges or were not placed on

modified status.  The Amended Complaint states in conclusory
fashion only that plaintiff believed that the John Doe police
officers were not questioned in connection with the altercation.
(Am. Compl. ¶ 44.)  But there are no allegations that any
questioning--or lack thereof--was based upon race.  Accordingly,
the Amended Complaint fails to state a hostile work environment
claim under the NYCHRL.

III. RETALIATION

    A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL

    Plaintiff also asserts that defendants retaliated against
him based upon his participation in a protected activity--i.e.,
speaking the truth--in violation of Title VII, 42 U.S.C. §§ 1981
& 1983,[6] and the NYSHRL.  Claims of retaliation under those
statutes are generally analyzed in the same way, with the same
standards of liability.  See Schiano, 445 F.3d at 608 (Title VII
& NYSHRL); Back v. Hastings on Hudson Union Free Sch. Dist., 365
F.3d 107 (2d Cir. 2004) (§ 1983); Choudhury v. Polytechnic
Institute of New York, 735 F.2d 38 (2d Cir. 1984) (§ 1981).

    A plaintiff adequately states a claim for deprivation of
equal protection rights stemming from retaliation for
complaining about discrimination pursuant section 1983 where the
complaint alleges the plaintiff suffered a "materially adverse

---

[6] Because plaintiff has abandoned his First Amendment claim, the claim for
retaliation under section 1983 may not lie concurrently with one under Title
VII.  Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993).

employment action," which was "causally connected" to the plaintiff's engaging in a "protected activity." Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007); Bermudez, 783 F. Supp. 2d at 575.  A plaintiff engages in a protected activity when he "oppose[s] any practice made an unlawful employment practice by Title VII, or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." Bermudez, 783 F. Supp. 2d at 575 (quotation marks and alterations omitted).

An adverse employment action is one that materially and adversely alters the terms and conditions of employment. Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 446 (2d Cir. 1999).  A "materially adverse change" is, for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

Here, plaintiff argues in his opposition to the motion to dismiss that the protected activity in which he engaged was "complaining to the uniformed officers at the scene and at 19th Precinct regarding the actions of Harrington, Mazzilli, and P.O. John Does regarding his unequal and discriminatory treatment on account of his race, national origin . . . ." (Mem. Of Law in

Opp'n to Defs.' Mot. To Dismiss the Am. Compl. (Dkt. No. 21) at 18.)  However, no such allegation appears in the Amended Complaint.  It is axiomatic that a complaint cannot be amended by assertions made in an opposition brief.  In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001).  Thus, plaintiff's assertion in his opposition cannot form the basis for any allegations of protected activity.  And without any alleged protected activity, the claims under Title VII, 42 U.S.C §§ 1981 and 1983, and the NYSHRL must fail.  See Patane, 508 F.3d at 112.

The only protected activity alleged in the complaint is plaintiff's filing of charges with the EEOC.  (See Am. Compl. ¶ 6.)[7]  That filing occurred on January 22, 2010.  (Id.)  The closest in time "adverse action" taken against plaintiff--i.e., the January 8, 2010 placement of plaintiff on Level II discipline monitoring--occurred prior to the EEOC filing, though.  (Id. ¶ 39.)[8]  The Level II discipline monitoring thus cannot be "causally connected" to the filing of the EEOC charges such that there is a basis for a retaliation claim.  Cf. Butts

---

[7] Plaintiff's refusal to "lie" to "protect" other NYPD officers does not constitute a "protected activity" for purposes of a retaliation claim.  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to actions taken to protest or oppose statutorily prohibited discrimination.").

[8] Plaintiff asserts in wholly conclusory fashion that "[d]efendants continued to retaliate against [him] up until his retirement in October 2011 . . . ." (Am. Compl. ¶ 45.)  That allegation does not come close to meeting the standard set forth in Twombly or Iqbal and thus, the Court will not credit it on this motion.

v. New York City Dep't of Housing Preservation & Dev., 307 Fed. Appx. 596, 599 (2d Cir. 2009) ("The plaintiff can establish the causal connection indirectly by showing that the protected activity was closely followed by discrimination . . ." (emphasis added)).

Accordingly, without any allegations in the Amended Complaint supporting a protected activity and an adverse employment action, plaintiff's retaliation claims fail under Title VII, 42 U.S.C. §§ 1981& 1983, and the NYSHRL.  See Desir v. City of New York, 453 Fed. Appx. 30, 35 (2d Cir. 2011).

B. NYCHRL

As with discrimination and hostile work environment claims under the NYCHRL, claims of retaliation under the NYCHRL must be evaluated separately from its federal and state counterparts to effectuate the statute's "uniquely broad and remedial purpose." See Loeffler, 582 F.3d at 278; accord Melie v. EVCI/TCI College Admin., 374 Fed. Appx. 150, 153-54 (2d Cir. 2010).  The same analysis employed for retaliation claims under Title VII and NYSHRL applies to retaliation claims under the NYCHRL.  Anderson v. Davis Polk & Wardwell LLP, --- F. Supp. 2d ---, 2012 WL 734120, at *13 (S.D.N.Y. Mar. 6, 2012).  Even though the standard for a NYCHRL retaliation claim is "broader" or "lower" than the same claim under its federal or state counterparts, plaintiff's failure to establish a causal connection between any

23

protected activity and an adverse employment action likewise dooms plaintiff's retaliation claim under the NYCHRL. See Dixon v. Int'l Federation of Accountants, 416 Fed. Appx. 107, 110 n.1 (S.D.N.Y. 2011).

IV. EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff asserts that defendant Mazzilli used excessive force against him in violation of his constitutional rights pursuant to 42 U.S.C. § 1983. A claim for excessive force in violation of the Fourth Amendment is analyzed with objective reasonableness. Graham v. Connor, 490 U.S. 386, 397 (1989); Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003). That standard

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham, 490 U.S. at 396. "Not every push or shove" amounts to a Fourth Amendment violation. Id. Indeed, a "de minimus use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101 105 (2d Cir. 2005). Further, a plaintiff must allege that he sustained an injury to maintain an excessive force claim. Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). Such injury need not be severe, however. Robison v. Via, 821 F.2d

913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff alleges that Officer Mazzilli pushed his wrist into his pocket, punched him in the chest, threw him to the ground face first, forcibly handcuffed his left arm, and attempted to manipulate his right arm into handcuffs as well. (Am. Compl. ¶¶ 25-26.)  It is further alleged that after plaintiff informed defendant Mazzilli of a prior surgery which rendered plaintiff's right arm unable to be fully brought behind his back, Mazzilli used a second set of handcuffs "so that [plaintiff's] right arm would not have to be pulled back."  (Id. ¶ 27.)

As an initial matter, the handcuffing itself cannot support plaintiff's excessive force claim. Wims, 2011 WL 2946369, at *5 ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim.").  More importantly, plaintiff does not allege "any specific or identifiable physical or mental harm beyond [] conclusory assertion[s] which, standing alone, [are] insufficient under Twombly and Iqbal."  Id.  (See Am. Compl. ¶¶ 32 (plaintiff informed Sergeants Mulvey and Cosmo that he "was injured and wanted medical attention"), 33 ("Plaintiff chose to wait until after being interrogated to seek medical attention"), 46 (plaintiff "suffered emotional and physical

damages" "[a]s a result of these incidents").)  That failure dooms plaintiff's excessive force claim.  Accordingly, it must be dismissed.[9]

V. MONELL CLAIM

To state a claim for municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), a plaintiff must allege that "'policies or customs that [were] sanctioned by the municipality led to the alleged constitutional violation.'"  Missel v. Ctny. of Monroe, 351 Fed. Appx. 543, 545 (2d Cir. 2009) (quoting Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)).  A Monell claim can survive a motion to dismiss where the plaintiff

> make[s] factual allegations that support a plausible
> inference that the constitutional violation took place
> pursuant to either a formal course of action
> officially promulgated by the municipality's governing
> authority or the act of a person with policy making
> authority for the municipality.

Id.

Plaintiff has failed to set forth factual allegations that would support a plausible inference that the City's "policies" or "customs" caused Harrington's--or even Mazzilli's--alleged

---

[9] In Wims, the court dismissed the excessive force claim despite the "liberal construction" accorded to complaints filed by pro se plaintiffs.  2011 WL 2946369, at *1, 5.  The failure to allege a specific and identifiable injury is more egregious here where plaintiff is represented by counsel, where plaintiff was "on notice" of the deficiency related to the failure to allege a specific and identifiable injury (see Mem. Of Law in Support of Defs. Mot. To Dismiss Compl. (Dkt. No. 13) at 22), and where the complaint has been amended once at plaintiff's own election subsequent to that "notice."

violations of plaintiff's rights.  The complaint is similarly
devoid of allegations regarding any policy promulgated by the
City requiring NYPD police officers to "lie" to "protect" other
NYPD officers when they commit constitutional or
NYPD-regulations violations.

Plaintiff alleges that the "City of New York failed to
train its police officers as to display a deliberate
indifference to the constitutional rights [of] those within the
City of New York."  (Am. Compl. ¶ 71.)  But that allegation
standing alone does not create a plausible inference that any of
Harrington's and Mazzilli's complained-of violations--regardless
of whether those violations relate to plaintiff's claim for
disparate treatment, hostile work environment, or retaliation--
were made pursuant to any City-mandated policy.  That allegation
is merely a recitation of the element of the cause of action--
something the Court cannot credit on this motion.  Iqbal, 129 S.
Ct. at 1949.  Accordingly, the Monell claim must be dismissed.

CONCLUSION

For the aforementioned reasons, defendants' motion to
dismiss is GRANTED.

Because plaintiff elected to amend the complaint in
response to defendants' motion to dismiss the original complaint
where nearly identical arguments to those raised on this motion,
having the benefit of the Court's explicit admonition that any

27

pleading deficiencies would be deemed with prejudice on a subsequent motion to dismiss, plaintiff's request for leave to amend is DENIED.  Accordingly, the dismissal of the Amended Complaint is with prejudice.

The Clerk of Court is directed to terminate any pending motions and terminate this action.  Judgment is to be entered for defendants the City of New York, Michael Harrington, and Michael Mazzilli.


SO ORDERED:

Dated: New York, New York
       April **26** , 2012

                                 _____
                                       Katherine B. Forrest
                                 UNITED STATES DISTRICT JUDGE